UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICKIE PATTON and CATHLEEN MARQUARDT,
    Plaintiffs,

v.                                       C.A. No. 17-259WES

BARRY JOHNSON, STEVEN JOHNSON, LAW OFFICES OF STEVEN M. JOHNSON, P.C., d/b/a JOHNSON LAW FIRM,
    Defendants.

## MEMORANDUM AND ORDER[1]
## TRANSFERRING VENUE TO NORTHERN DISTRICT OF TEXAS

Patricia A. Sullivan, United States Magistrate Judge.

Before the Court is Defendants' motion to transfer this case to the United States District Court for the Northern District of Texas for all purposes pursuant to 28 U.S.C. § 1404(a). Plaintiffs oppose the motion. For the reasons stated below, the motion is granted.

**I.    BACKGROUND**

In April 2007, Plaintiff Rickie Patton and his wife, Plaintiff Cathleen Marquardt, (collectively, "Plaintiffs"), then residents of Louisiana, engaged the Fort Worth, Texas-based attorney Steven Johnson and his firm, Law Offices of Steven M. Johnson, P.C., d/b/a The Johnson Law Firm ("JLF"), to represent them in connection with injuries Patton experienced due

---

[1] In addition to the request to transfer venue pursuant to 28 U.S.C. § 1404(a), this motion (ECF No. 52) also asked the Court to dismiss this action or to stay it pending ongoing proceedings in Texas. For the reasons discussed *infra*, the Court directed the parties to brief only the portion of the motion addressing venue. Text Order of July 1, 2019. Consistently, this memorandum and order addresses only the portion of the motion dealing with venue. The portion of the motion seeking dismissal or a stay remains pending. In light of these circumstances, despite a referral that asked me to issue a report and recommendation, this decision is issued as a memorandum and order pursuant to McEvily v. Sunbeam-Oster Co., 878 F. Supp. 337, 340 (D.R.I. 1994) (motion to transfer venue is nondispositive and magistrate judge should make determination). In choosing this approach, the Court is mindful of the guidance in Patton v. Johnson, 915 F.3d 827, 832-33 (1st Cir. 2019), which holds that it is error for a magistrate judge to issue a report and recommendation on a non-dispositive motion. Id.

to a kugel mesh patch used to treat a hernia. The complaint in this case relies on the engagement agreement between them (Attorney Representation Agreement ("ARA") (ECF No. 1-3 at 19)), which specifies that it was entered into in Tarrant County, Texas, which "shall also be the place of performance and payment" and that "it shall be construed in accordance" with Texas law. ECF No. 1-1 at 18 ¶ 10 ("Compl."). The ARA also contains an arbitration clause requiring that disputes arising from the engagement be resolved in Fort Worth, Texas.[2] Id. ¶¶ 16-18.

Based on the ARA, JLF filed suit on Plaintiffs' behalf in Texas. Later in 2007, the case was transferred to the District of Rhode Island as part of a centralized multi-district litigation proceeding along with over one thousand other cases. In re Kugel Mesh Hernia Patch Prods. Liab. Litig., MDL Docket 07-1842WES (D.R.I.). Rhode Island attorney John Deaton was engaged to act as local counsel and did most of the Rhode Island in-court work. In 2013, another Texas attorney, Defendant Barry Johnson,[3] was hired by JLF to work on the Plaintiffs' case. In 2015, following the Texas-based efforts of JLF and Barry Johnson, Plaintiffs' kugel mesh suit settled – all relevant communications regarding the settlement were between JLF in Fort Worth, Texas, and Plaintiffs in Louisiana; the only in-person meeting to discuss the settlement was in Fort Worth, Texas. Compl. ¶¶ 25-26; ECF No. 52-2 ¶ 5. The settlement was executed by Patton in Louisiana and returned to JLF in Fort Worth, Texas. ECF Nos. 52-8, 52-9.[4] The settlement document contains a choice-of-laws clause, which states that the "Release shall be governed by and construed in accordance with the law of the State of Rhode Island as applied to contracts made in the State of Rode Island." ECF No. 52-9 at 17. It also has a venue clause: "Any dispute

---

[2] Tarrant County, Texas, which includes the city of Fort Worth, Texas, is in the Northern District of Texas.

[3] Barry Johnson and Steven Johnson are not related.

[4] This document is a modified version of a prior settlement document Patton signed. See ECF No. 52-8. The modified version states that it "supersedes all other agreements, written or oral, or implied, relating to the same subject as this Release." ECF No. 52-9 at 17.

2

arising under this Release or relating to the subject matter thereof, shall be filed only in the Superior Court of Rhode Island." Id. Unlike the ARA, the Release referenced in the settlement is not attached to or relied on in the complaint in this case.

Plaintiffs were not satisfied with the work of Fort Worth, Texas, attorneys, although they had no complaint about the work of Deaton, the Rhode Island attorney. In April 2017, they filed suit against JLF and Barry Johnson in Rhode Island Superior Court for legal malpractice, intentional and negligent misrepresentation and infliction of emotional distress, breach of fiduciary duty and unfair business practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.* ("UDAP"). Because Plaintiffs still both resided in Louisiana, while JLF and Barry Johnson were citizens of Texas, this malpractice/tort case was removed to this Court based on diversity of citizenship. With no claim grounded in the settlement Release, no party tried to assert its clause requiring venue in the Rhode Island Superior Court. Meanwhile, Barry Johnson and JLF each tried to initiate a Texas-based arbitration and/or Texas state court litigation to compel Texas-based arbitration of Plaintiffs' claims in accordance with the ARA. Since then, the parties' fight over arbitration has been raging, in this Court (and the First Circuit) and, more recently, in Texas, principally in the Northern District.[5]

Since removal to this Court, the case has been stuck in the pre-discovery phase due to the efforts of Barry Johnson and JLF to force the case into arbitration in Texas, and Plaintiffs' aggressive resistance to those efforts, as well as the parties' unsuccessful court-annexed mediation. The fight over arbitration has resulted in particularly time-consuming litigation. See,

---

[5] In Patton II, Judge Selya aptly applied the moniker "procedural motley" to the travel of the parties' disagreements, particularly to describe the Texas-based battle royale over arbitration. 915 F.3d at 830. Since, it has gotten much more complicated. The parties ably set out the details in their memoranda; briefly, as of the spring/summer of 2019, there has been a resumption of proceedings in Texas state court (with a trial judge ordering the parties to arbitration), an appeal, the Texas Court of Appeals stay of the lower court's ruling and a mandamus filing in the Texas Supreme Court. ECF Nos. 45-1 at 2-3, 54-1 at 2.

3

Patton v. Johnson, 915 F.3d 827, 830 (1st Cir. 2019) ("Patton II"), affirming Patton v. Johnson, C.A. No. 17-259WES, 2018 WL 3655785 (D.R.I. Aug. 2, 2018) ("Patton I").[6] And after the mandate from the appeal returned the case to the District Court, the parties filed more pre-discovery motions. As a result, this case is over two years old, two pretrial scheduling orders have lapsed and most recently, the Court did not enter a scheduling order at the parties' request due to the need to resolve pre-discovery issues. Text Order of Apr. 19, 2019. As a practical matter, the discovery phase of this case has not yet begun, nor has this Court tangled at all with issues related to the merits of Plaintiffs' claims.

Among the post-mandate pre-discovery motions[7] is JLF's motion (joined by Barry Johnson) to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). ECF No. 52. In support of the venue-transfer motion, JLF advises that it recently learned that Patton and Marquardt have moved from Louisiana and now live in Texas.[8] In light of the overwhelming number of witnesses and documents and relevant events located in Texas, compared with only one witness (with associated documents) in Rhode Island (Deaton), the Court directed the parties to focus on the § 1404(a) transfer motion first.

---

[6] The reader's familiarity with Patton I and Patton II is assumed.

[7] To protect the recent order of a Texas state court (located in the Northern District of Texas) to arbitrate, Defendant Barry Johnson filed a motion to stay or dismiss the instant case. ECF No. 45. Plaintiffs responded with a motion asking the Court to enjoin all of the Texas state court proceedings (the Texas County Court of Law for Dallas County, the Texas Court of Appeals and the Texas Supreme Court). ECF No. 46. They argue that such an extraordinary remedy does not clash with the Anti-Injunction Act, 28 U.S.C. § 2283, because it is necessary to protect Patton II's judgment that the parties are bound by the decision of the first arbitrator.

[8] Plaintiffs' move to Texas likely makes them now citizens of Texas, where all Defendants are also citizens. This does not divest the Court of diversity jurisdiction over the case. Freeport-McMoran, Inc., v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (per curiam) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); Wichita Railroad & Light Co. v. Public Util. Comm'n of Kansas, 260 U.S. 48, 54 (1922) ("Jurisdiction once acquired . . . is not divested by a subsequent change in the citizenship of the parties.").

In their opposition to the § 1404(a) venue-transfer motion, Plaintiffs concede the accuracy of JLF's summary of the situs of witnesses, documents and relevant events in Texas, essentially confirming that the Northern District of Texas would be a far more convenient forum than the District of Rhode Island. Their only factual quibble is their argument that Deaton (and his Rhode Island staff and documents in his Rhode Island office) is more important to the case than JLF and Barry Johnson have portrayed, although they fail to explain why. They nevertheless object to transfer to the Northern District of Texas because this is the "first filed" federal case. They also contend that equitable considerations, including the timing of JLF's motion (filed more than two years after the complaint was filed), dictate that it should stay here, and that transfer would cause delay. Therefore, they argue that transfer would not be in the interest of justice.

## II. LAW AND ANALYSIS

Section 1404(a) of Title 28 provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Section 1404(a) confers on the district court discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (internal quotation marks omitted). First, however, the Court must determine whether the case is one that "might have been brought in the transferee court." In re Collins & Aiken Corp. Sec. Litig., 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (internal quotation marks omitted). If it is, the Court then looks to both private and public interest factors to determine if transfer is appropriate. Tristar Prods., Inc. v. Novel Brands, LLC, 267 F. Supp. 3d 380, 382 (D.R.I. 2017). Such factors include: (1) ease of

access to sources of proof; (2) availability of compulsory process to compel attendance of witnesses; (3) cost of attendance of willing witnesses; (4) ease of a view of premises, if necessary; (5) enforceability of the judgment, if obtained; (6) advantages and obstacles to a fair trial; (7) status of the court's trial calendar; and (8) familiarity of forum with applicable state law. Id. The moving party bears the burden of proving that a transfer is warranted. Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012).

Plaintiffs do not dispute that, at the time it was filed in Rhode Island, this case could have been brought in the Northern District of Texas under either 28 U.S.C. § 1391(b)(1) or § 1391(b)(2) because JLF and Barry Johnson were both citizens of Texas, both then were residing in the Northern District of Texas, as well as because the ARA stipulates that Tarrant County, Texas, (which is in the Northern District of Texas) is the place of performance[9] and virtually all of the events and omissions that give rise to the malpractice/misrepresentation claims occurred in the Northern District of Texas. Diversity jurisdiction under 28 U.S.C. § 1332 was intact because Plaintiffs then lived in Louisiana. See Erlich v. Ouellette, Labonte, Roberge & Allen, P.A., 637 F.3d 32, 34 n.2 (1st Cir. 2011).

All the applicable private and public interest factors tip towards transfer to the Northern District of Texas. The parties do not dispute that all of them are now located in Texas. JLF, the law firm, which is the counter-party with Patton on the ARA, together with all of its staff and documents, are located in the Northern District of Texas, a proposition that JLF has buttressed with supporting declarations. Enercon v. Flextronics Int'l USA Inc., Docket no. 2:18-cv-00258-GZS, 2018 WL 6729774, at *3 (D. Me. Dec. 21, 2018) (movant must pinpoint witnesses and

---

[9] The ARA also has a forum selection clause, but it is embedded in the arbitration clause, as to which the Texas arbitrator made a binding finding of unenforceability, resulting in the denial of Plaintiffs' motion to compel arbitration, which was affirmed by the First Circuit in Patton II, 915 F.3d at 830.

expected testimony for transfer). Otherwise, the documents are likely in electronic form, easily producible in any state; therefore, to the extent that local counsel, Deaton, has any pertinent documents, it would not be inconvenient to produce them in the Northern District of Texas. Only one potential set of witnesses (Deaton and his staff) is located in Rhode Island; however, as JLF and Barry Johnson point out, the complaint alleges nothing about actionable conduct or omissions by Deaton. Nor have Plaintiffs presented any explanation for why Deaton is a key witness, nor do they cite anything to elucidate why justice would be served by a venue convenient only to a non-party witness but so inconvenient for the parties. Plaintiffs do not dispute that the issues arise from events that occurred in Texas, principally the Northern District, that the relevant and actionable documents were generated there and that the actionable representations were made there. Viewed through the lens of the § 1404(a) factors, including access to sources of proof, the availability of compulsory process to compel attendance of witnesses, the cost of attendance of willing witnesses, and the enforceability of a judgment, if one is obtained, it is crystalline that the proposed § 1404(a) transfer would clearly serve the "interests of justice."

Consideration of the factor of "familiarity of forum with applicable state law" also tips towards the Northern District of Texas. Except for the claim based on Rhode Island UDAP (R.I. Gen. Laws § 6-13.1-1, *et seq*.), Plaintiffs' tort claims – legal malpractice and intentional and negligent misrepresentation and infliction of emotional distress – are entirely centered in the Northern District of Texas so that, pursuant to the Rhode Island choice of laws doctrine, it is overwhelmingly likely that Texas law will apply. See Najarian v. Nat'l Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001) (Rhode Island choice of law principles look to law of place of injury, location of conduct causing injury, residence of parties and place where parties'

7

relationship is centered). And while the Rhode Island UDAP Count seems to weigh against transfer, it is likely this statute would be found inapplicable in light of the Commerce Clause's prohibition on "the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State," Healy v. Beer Inst., Inc., 491 U.S. 324, 336 (1989). Further, the complaint challenges the conduct of Texas-based attorneys admitted to practice law in Texas, whose conduct is governed by Texas ethical and disciplinary standards. The conduct of the Rhode Island attorney, Deaton, is not in issue, so Rhode Island rules governing attorney conduct are not pertinent.

The contractual choice of laws and venue provisions in the ARA and the settlement Release point in opposite directions. On the one hand, the complaint charges JLF and Barry Johnson with legal malpractice, and invokes the ARA, which is the engagement agreement between Patton and JLF. The ARA calls for the application of the law of Texas and recites that the Northern District of Texas (Tarrant County) shall be deemed to be the place of performance. And the ARA's arbitration clause (held to be unenforceable in Patton I and II) calls for venue in the Northern District of Texas in a JAMS arbitration. By contrast, the settlement Release provides for Rhode Island law "as applied to contracts" and calls for venue of contract disputes in "Superior Court of Rhode Island." ECF No. 52-9 at 17. However, the settlement Release does not appear to be implicated by this case in that Plaintiffs are not claiming that it was breached. Consistent with its inapplicability, Plaintiffs appear to have waived any contractual right to stay in the Rhode Island Superior Court because they did not seek to assert the settlement Release's venue clause when the case was removed more than two years ago. See Glob. Oil Tools, Inc. v. Expeditors Int'l of Washington, Inc., CIVIL ACTION No. 16-16372, 2019 WL 2437082, at *4 (E.D. La. June 11, 2019) (collecting cases finding waiver of venue clauses); Am.

8

Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc., 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) (waiver of venue clause because "failure to assert the forum selection clause during the first eleven months of the pending litigation goes far beyond 'mere silence, oversight or thoughtlessness in failing to object'"). Also consistent with its inapplicability, Plaintiffs have not raised the settlement Release's venue clause as a reason why the case should not be transferred to the Northern District of Texas. Vargas-Colon v. Fundacion Damas, Inc., 864 F.3d 14, 24 (1st Cir. 2017) (argument not developed in brief need not be considered). Thus, while the competing choice of laws/venue clauses in the ARA and settlement Release cannot be reconciled, they do not need to be, particularly where neither venue clause is enforceable in this case. At bottom, it is the ARA's language that matters and it tips towards the Northern District of Texas.

A final factor leaning towards a Texas transfer is that the parties' war over arbitration rages on, now entirely in Texas. Monitoring what has been happening with this Texas state court brouhaha has been an ongoing struggle for the parties (represented by Rhode Island attorneys) and for this Court. That effort would be far more convenient if this case were situated in the Northern District of Texas. More substantively, contemplating the extraordinary injunction that Plaintiffs have asked this Court to issue – to enjoin ongoing Texas state court proceedings at all three levels of its court system – certainly would be more appropriate for consideration by the federal court sitting in the Northern District of Texas. See Smith v. Bayer Corp., 564 U.S. 299, 306 (2011) ("[T]he [Anti-Injunction] Act's core message is one of respect for state courts. The Act broadly commands that those tribunals 'shall remain free from interference by federal courts.'").

Plaintiffs' argument that transfer will result in unnecessary delay and wasted judicial resources does not help their cause. As to waste of judicial resources, Plaintiffs are right that the

9

case has been sidetracked by litigation over arbitration. However, although this Court may have invested substantial resources, none of this work relates to the merits; to the contrary, neither the parties nor this Court have gotten deeply into discovery. This is far from being a case where substantial resources have resulted in judicial familiarity with the factual background and the legal issues, so that transfer would waste scarce judicial resources. Zahn v. Yucaipa Capital Fund, 218 B.R. 656, 679-80 (D.R.I. 1998). Relatedly, despite the passage of two years, there has been no untoward delay on JLF's part – its § 1404(a) motion was timely made right on the heels of the final resolution of its failed attempt to enforce the ARA's Texas venue/arbitration clause; the timing also reflects its recent discovery that Patton and Marquandt are now residents of Texas. Given the travel of this case in this Court so far (with which this writer is intimately familiar), the Court finds that a transfer to Texas now will not result in any lost momentum, additional delay or waste of judicial resources. Plaintiffs make no reasoned argument to rebut this finding, nor have they presented any concrete evidence that transfer would inflict actual prejudice. Walsh v. Microsoft Corp., CIVIL ACTION NO. 1:13-CV-13, 2014 WL 12600740, at *1 (S.D. Tex. Mar. 21, 2014) (noting that in some cases four-year delay not a bar to § 1404(a) transfer for convenience).

Plaintiffs' other argument against transfer is that they were "first to file" and the Court must defer to their choice of forum. However, while Plaintiffs are right that the Court must at least consider their choice of Rhode Island, in this case, this factor is not entitled to substantial weight because both Patton and Marquardt are nonresidents with no connections of any sort to Rhode Island. Tristar, 267 F. Supp. 3d at 383. Accordingly, their choice of this forum should be given little deference by this Court. See Nash v. CVS Caremark Corp., C.A. No. 09-079S, 2009 WL 2393937, at *2 (D.R.I. July, 1, 2009) (while "[i]t is true that ordinarily a strong presumption

favors Plaintiff's choice of forum[,] . . . the 'strong presumption is greatly weakened where plaintiff's chosen forum is not also his home'") (citations omitted).

This case involves two Texas attorneys and a Texas law firm, sued by their now-Texas-based former clients, who alleged that the attorneys breached their duty to Plaintiffs and engaged in tortious misconduct, all stemming from an attorney-client relationship formed in the Northern District of Texas and based on conduct that occurred almost entirely in the Northern District of Texas. The nature of this case and its origins all point to that Court having a greater private and public interest in its outcome so that a transfer to that Court is overwhelmingly in the interest of justice.

## III. CONCLUSION

Based on the foregoing, the Court grants the portion of Defendants' motion (ECF No. 52) seeking to transfer venue to the Northern District of Texas because – after balancing the convenience to the parties, public interest considerations and Plaintiffs' forum choice – the Court determines that transferring is in the interest of justice under 28 U.S.C. § 1404(a).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 4, 2019